169 So.2d 314

**MOBILE CAB & BAGGAGE CO., Inc., et al.**

v.

**Joyce BUSBY.**

**1 Div. 57.**

Supreme Court of Alabama.

Nov. 19, 1964.

Inge, Twitty & Duffy, Mobile, for appellant Mobile Cab & Baggage Co.

Cunningham & Bounds, Mobile, for appellee.

LIVINGSTON, Chief Justice.

Joyce Busby sued the Mobile Cab and Baggage Company, a Corporation, the owner and operator of a taxicab, and G. H. Elliott, the owner of another automobile, and C. M. Ikner, the driver of the Elliott automobile, for damages for personal injuries received when the taxicab and the Elliott automobile ran together at a street intersection in the City of Mobile, Alabama.

The amended complaint contained one count against all the defendants, jointly and individually, and alleged, in substance, that the plaintiff Busby was a passenger for hire in the taxicab, and that an automobile owned by Elliott and driven by Ikner, the agent of Elliott, and the taxicab ran together at the intersection of Fulton Road and Dublin Street, public streets in the City of Mobile, Alabama; that all her injuries and damages were the direct and proximate result of the negligence of defendant Ikner, the agent of Elliott while acting within the line and scope of his authority in the operation of the Elliott automobile, and the concurring negligence of the defendant, Mobile Cab and Baggage Company, in the carriage of plaintiff as a passenger for hire.

There was a verdict and judgment for $1500 against all of the defendants, and they prosecuted separate appeals, assigning separate alleged errors.

No question is raised as to the sufficiency of any pleading.

## ASSIGNMENTS OF ERROR OF THE MOBILE CAB & BAGGAGE COMPANY

The Mobile Cab and Baggage Company's assignment of error No. 4 is based on the refusal of that defendant's written request for the affirmative charge.

The oft-repeated "scintilla rule" is here applicable, as is that other familiar rule that, in determining the propriety of the refusal of the affirmative charge for the defendant, the evidence must be viewed in its most favorable light for the plaintiff.

As to the Mobile Cab and Baggage Company, the evidence must also be weighed in the light of the rule which applies to the degree of care imposed by law on common carriers of passengers for hire. The degree of care imposed by law on common carriers of passengers is stated in Birmingham Ry., Light & Power Co. v. Barrett, 179 Ala. 274, 282, 60 So. 262, 264, as follows:

"* * * (1) Common carriers of passengers are bound, with respect to their undertaking to safely carry them,

to exercise the highest degree of care, skill, and diligence, and are liable to passengers for the slightest degree of negligence proximately resulting in injury to them. (2) The 'highest degree' of care, skill, and diligence is a relative term, and means the highest degree required by the law in any case where human safety is at stake, and the highest degree known to the usage and practice of very careful, skillful, and diligent persons engaged in the business of carrying passengers by similar means and agencies. (3) It does not mean that every possible or conceivable care and precaution which might increase, or even assure, the safety of the passenger, must be taken, but only such as are reasonably practicable under the circumstances; i. e., reasonably consistent with the practical operation of the carrier's business. * * * "

See also Cannon v. Louisville & N. R. Co., 252 Ala. 571, 42 So.2d 340; Louisville & N. R. Co. v. Bowen, 212 Ala. 690, 103 So. 872; Mosley v. Teche Lines, Inc., 232 Ala. 110, 166 So. 800; Pollard v. Williams, 238 Ala. 391, 191 So. 225; Montgomery City Lines v. Jones, 246 Ala. 291, 20 So.2d 599.

The evidence tended to prove that on the night of October 29, 1960, plaintiff was a passenger for hire in the taxicab of Mobile Cab and Baggage Company, Inc., when said taxicab was in a collision with another automobile owned by G. H. Elliott, and being driven at the time of the collision by Melvin Ikner as an agent of Elliott, acting within the line and scope of his authority, at or near the intersection of Fulton Road and Dublin Street, public streets in the City of Mobile, Alabama; that at the time of the collision, Melvin Ikner was a teenager, and there were six other young people in the Elliott car at the time of the accident; that the young people, including Elliott's son, were riding around in Elliott's car when Elliott's son asked Ikner to drive. Ikner did so and was driving when the collision occurred.

There is no conflict in the evidence as to the following facts: The collision occurred in the nighttime; Fulton Road runs, more or less, north and south; Dublin Street runs, more or less, east and west, and Dublin Street on the west side of Fulton Road is called Johnson Avenue; there is no traffic light at the intersection of Fulton Road and Dublin Street, but there is a street light there, and a stop sign at the intersection facing traffic going west on Dublin Street; the collision occurred after the Elliott car, driven by Ikner was nearly across Fulton Road and was entering Johnson Avenue, and it was hit on its right side by the taxicab driven by Watts.

Other evidence tended to prove that: Ikner did not stop before he entered Fulton Road; from a distance of 200 or 250 feet north of the intersection of Fulton Road and Dublin Street, a driver of an automobile going south on Fulton Road could see "quite a distance" up Dublin Street to his left, the direction from which Ikner came; Watts did not see the Elliott car until it was right in front of him with its lights on; Watts applied his brakes, cut his wheels to the right; the taxicab struck the Elliott car near the rear door or right rear wheel; the car spun around and the taxicab came to rest at or near the curb at the southwest corner of the intersection of Fulton Road and Dublin Street, or Johnson Avenue; the Elliott car came to rest on the north curb of Johnson Avenue; there were 48 feet of skid marks left by the taxicab leading up to where the cars collided; the taxicab traveled some 15 feet after the impact; the taxicab was going "quite fast." "I would say he was speeding, over 35 miles per hour."

■ We have made no attempt to set out all the evidence. It is recognized that if the negligence of the driver of the taxicab proximately contributed to the accident, the Mobile Cab and Baggage Company would be liable, although negligence on the part of the driver of the Elliott car contributed to it. Chambers v. Cox,

222 Ala. 1, 130 So. 416; Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610; Decatur Transit Co. v. Jennings, 253 Ala. 322, 45 So.2d 13.

■ We think the evidence presents a jury question as to the Mobile Cab and Baggage Company under the rules outlined above on either one or two theories. First, the inattention of the driver of the taxicab. There is evidence from which the jury could infer that the driver of defendant's taxicab could have seen the Elliott car as it failed to stop at the intersection in time to have stopped or slowed down, and thereby have avoided the accident.

We also think that the evidence concerning the speed and control of the taxicab by the defendant's driver warranted the submission of the question of the negligence of that driver to the jury. The severity of the impact, the distance the taxicab traveled after the impact, the skid marks on the pavement made by the taxicab, the fact that the taxicab driver cut into the Elliott car instead of away from it, the speed of the taxicab, the distance of the Elliott car from the taxicab when first seen by the taxicab driver, and how far the taxicab traveled between the time the taxi driver saw the Elliott car and the collision.

All of this evidence, and the evidence tending to show inattention on the part of the driver of the taxicab, was ample to carry the case to the jury as to the negligence of the driver of the taxicab and the liability of the defendant, the Mobile Cab and Baggage Company. There is no merit in this assignment of error.

For the same reasons, there is no merit in assignment of error No. 1 which is predicated upon the trial court's refusal to give the affirmative charge without hypothesis for Mobile Cab and Baggage Company.

■ Mobile Cab and Baggage Company's assignment of error No. 6 is based on the giving of the following charge for defendants Elliott and Ikner.

"No. 7. The court charges the jury that the law requires the highest degree of care, skill and diligence, by those engaged in the carriage of passengers by taxicabs, known to careful, diligent and skillful persons engaged in such business."

The complaint is that the trial court did not explain to the jury what was meant by the highest degree of care, skill and diligence. The argument is without merit because the charge does correctly state an abstract proposition of law, and the Mobile Cab and Baggage Company's remedy was to ask for an explanatory charge. Besides, the trial court explained to the jury the meaning of highest degree of care, skill and diligence in its oral charge.

■ Mobile Cab and Baggage Company's assignment of error No. 7 is based on the giving of Charge 9 for the defendants, Elliott and Ikner. Charge 9 reads:

"The court charges the jury that if you are reasonably satisfied from the evidence in this case that the driver for the defendant, Mobile Cab and Baggage Company, negligently operated the taxicab on Fulton Road and that such negligence was the sole proximate cause of any injuries suffered by the Plaintiff, then the court charges you that you must render a verdict in favor of Defendants, G. H. Elliott and Clinton Melvin Ikner."

■ At most, all that can be said of the charge might be that it is abstract, argumentative, and misleading. The Mobile Cab and Baggage Company should have requested an explanatory charge if they were dissatisfied with the charge itself. Empire Clothing Company v. Hammons, 17 Ala. App. 60, 81 So. 838; Gulf States Steel Company v. Comstock, 17 Ala.App. 430, 85 So. 305. The giving of an abstract, argumentative or misleading charge is not of itself reversible error. Ray v. Richardson, 250 Ala. 705, 36 So.2d 89. Supreme Court Rule 45.

Mobile Cab and Baggage Company's assignment of error No. 8 complains that it was error to allow the defendant Ikner to testify that the taxicab was moving "pretty fast."

 This testimony was elicited on cross-examination. The trial court has a wide discretion as to the cross-examination of a witness. See Birmingham Railway and Electric Co. v. Franscomb, 124 Ala. 621, 27 So. 508. If the trial court committed error in this instance, it was error without injury. Supreme Court Rule 45.

██ Mobile Cab and Baggage Company's assignment of error No. 9 is based on the trial court's refusal, at the conclusion of plaintiff's testimony, to exclude all the evidence as to Mobile Cab and Baggage Company. The trial court will not be put in error for refusing defendant's motion to exclude all plaintiff's evidence, nor will it be put in error for granting it if the evidence does not make a prima facie case. Atlantic Coast Line R. Co. v. French, 261 Ala. 306, 74 So.2d 266.

██ Mobile Cab and Baggage Company's assignment of error No. 11 is based on statements made by counsel for plaintiff in his closing argument to the jury. The other appellants, Ikner and Elliott, do not complain of the statements nor assign them as error. The record discloses the following:

"MR. BOUNDS: He told you, gentlemen, that he [Rancey Luce] was going to reach down in his pocket and pull out any money you award. Gentlemen, I'll tell you that any money you award in this case is not going to cost Rancey Luce a dime.

"MR. DUFFY: Now, we object to that, if Your Honor please. There is absolutely no liability insurance on the part of the gentleman here. He is self-insured and he pays for it out of his pocket. This is highly improper for the gentleman to argue such a matter to the jury.

"MR. BOUNDS: Gentlemen, he is not a party to this case. The defendant in this case is Mobile Cab and Baggage Company. Mobile Cab and Baggage Company, Incorporated, and any money that you award is not going to come out of his pocket. And Mr. DeMouy, he is coming along the same lines, gentlemen, he got up here and told you, he said, I wrote down his words, he said, you do to this young man over here what you would do to your sixteen year old boy. And any verdict you rendered in this case would punish that young man over there. Well, I will stand up here gentlemen and tell you that any verdict you render over there is not going to hurt that little young man at all. Mr. DeMouy knows that. Those things were said just to create the impression in your mind, gentlemen, that any verdict you render in this case would hurt the defendants involved and I am answering them when I am talking about this subject. I think common sense will tell you what the truth is about that situation on where the money is coming from.

"MR. DUFFY: Now, if the Court please, we renew the objection on the same grounds.

"MR. BOUNDS: Judge, they brought it up.

"MR. DUFFY: Let me finish. We renew the objection on the same grounds. Although, I said it was coming out of Mr. Luce's pocket the evidence shows that Mr. Luce is the owner of the Yellow Cab Company with Mr. Herndon and the gentleman is improperly stating that these folks are indemnified by some other company, which they are not.

"THE COURT: The party defendant in the case, of course, is Mobile Cab and Baggage Company, Inc., a corporation, and Mr. Luce and Mr. Herndon who have been spoken about in

the case are not actually parties to the case, but the issue doesn't turn on whose pocket the money comes out of. The issue is you are not to decide the case on the matter of sympathy. You are deciding the case on the right or wrong of the negligence in the case. You don't decide the issues on sympathy.

"MR. BOUNDS: Yes, sir."

An analysis of the factual situation readily discloses that there is no merit in this assignment of error.

The record shows that Mr. Duffy, counsel for defendant, the Mobile Cab and Baggage Company, in his argument to the jury had stated, in effect, that any award of damages the jury made against the Mobile Cab and Baggage Company would come out of the pocket of Mr. Luce. Mr. Bounds, counsel for plaintiff, replied that "any money you award plaintiff in this case is not going to cost Rancey Luce a dime." So far, the statement of Mr. Bounds was reply in kind and was a true statement for the simple reason that Luce was not a party to the suit.

It was at this point that Mr. Duffy injected the subject of insurance into the case by stating that: "There is absolutely no liability insurance on the part of the gentleman here [meaning, as we take it, Mr. Luce]. He is self-insured and he pays for it out of his pocket."

Under certain circumstances, it is as objectionable in a suit for damages for defendant's counsel to tell the jury that the defendant is uninsured, thereby invoking sympathy for the defendant, as it is for plaintiff's counsel to say to the jury that the defendant is insured, thereby telling the jury that the defendant would not have to pay any judgment that it might render against him. 88 C.J.S. Trial § 180, p. 352. See also 1964 Cumulative Pocket Part, 88 C.J.S. Trial § 180, for cases cited.

If counsel for a party litigant pursues an improper line of argument, he thereby invites a reply in kind, and statements made by opposing counsel by way of retaliation have often been considered proper which would otherwise be objectionable. 53 Am.Jur., Sec. 468, Trial, p. 375, and citation under Note 2. That is the situation here.

## ASSIGNMENTS OF ERROR OF APPELLANTS, ELLIOTT AND IKNER

Appellants, Elliott and Ikner, assigned nine alleged errors.

Assignments of error 1, 2, 3, 4, 5 and 7 are not argued and are, therefore, waived. Supreme Court Rule 9. Assignment of error No. 6 is predicated on the trial court's refusal to grant Elliott and Ikner's motion for a continuance because of an absent witness.

There is no question but that the granting of a continuance is discretionary with the trial court, and also that the movant must show that the testimony of the absent witness would be more than cumulative. Knowles v. Blue, 209 Ala. 27, 95 So. 481; Pate Lumber Company v. Davis, 215 Ala. 547, 112 So. 124. The refusing of a continuance because of an absent witness, where it is not shown what the witness would say if present, is not an abuse of the court's discretion. Authorities, supra.

Appellants', Elliott and Ikner, assignment of error No. 8 contends that the court erred in allowing the witness Watts to testify as to the speed of the Ikner vehicle when he did not have the opportunity to form such an opinion. As to this assignment of error, the same may be said as was said about assignment of error No. 8 of the appellant, Mobile Cab and Baggage Company. It is without merit. Supreme Court Rule 45.

Assignment of error 9 of Elliott and Ikner relates to the trial court's allowing the appellant, Mobile Cab and Baggage Company, to introduce a prior inconsistent statement of the plaintiff with respect to the speed of the Ikner vehicle.

If such a ruling of the court were error, there was no injury to the appellants Elliott and Ikner, for the simple reason that the speed of the vehicle driven by Ikner neither adds to nor detracts from their liability in this case. Ikner had admitted from the start that he failed to stop at the stop sign going into Fulton Road.

There is no error in the record and it is due to be, and is, affirmed.

Affirmed.

LAWSON, GOODWYN and COLEMAN, JJ., concur.