James P. Lomax sued his co-employees Ted Speed and Aubrey Wilkerson for injuries which he sustained in 1979 during the course of his employment by Bryson Environmental Services, Inc. At the conclusion of a day-and-a-half trial, at which sixteen witnesses testified, the Honorable Robert L. Byrd directed a verdict for Speed and Wilkerson on Lomax's wantonness claim. The jury found Lomax, Speed, and Wilkerson guilty of negligence and signed a verdict form indicating a verdict for Speed and Wilkerson. Lomax appeals. We affirm.
Our standard for reviewing the trial court's granting of a directed verdict is the same standard used by the trial court in ruling on a motion for a directed verdict. Great SouthwestFire Insurance Co. v. Stone, 402 So.2d 899 (Ala. 1981).
The standard by which the trial court must determine the propriety of granting a motion for a directed verdict is the "scintilla evidence rule." Rule 50(e), Ala.R.Civ.P. Admitting the truthfulness of all evidence favorable to Lomax, are there facts from which the jury could reasonably infer that Speed and Wilkerson consciously did some act or consciously omitted some duty while under knowledge of existing conditions, and while conscious that, from the doing of such act, or the omission of such duty, injury to Lomax would likely or probably result or that with reckless indifference to the consequences Speed and Wilkerson consciously and intentionally did some wrongful act or omitted some known duty which produced Lomax's injury?Roberts v. Brown, 384 So.2d 1047 (Ala. 1980). The inferences do not have to be the most likely inferences which would be drawn from the evidence; all inferences must be conceded which are not logically unreasonable. Allstate Enterprises, Inc. v.Alexander, 484 So.2d 375 (Ala. 1985).
Lomax was 26 years old at the time of the accident. He was physically strong, very athletic, able to lift heavy weights, reasonably smart, and had common sense. He had a high school education and had worked in manual labor following graduation from high school. He had been an equipment operator; he had operated farm tractors, front end loaders, backhoes, and dozers; and he had worked in constructing roads. He had worked as a deep well pusher and as a pumper on an oil rig. He had worked around drilling rigs, including climbing such rigs. He had worked as an outside machinist at Ingall's Shipyard; and for approximately seven months before the *Page 457 
accident, he worked in "hydro-blasting," which is the use of high pressure water to clean lines, heat exchangers, and various pieces of equipment.
Speed was the branch manager of Bryson Environmental. We find no evidence that one of his personal job duties, as opposed to a general duty of safety owed by the employer, was to provide a safe place for Lomax to work. Kennemer v. McFann,470 So.2d 1113 (Ala. 1985); Welch v. Jones, 470 So.2d 1103 (Ala. 1985);Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334
(Ala. 1980).
Wilkerson's duty involved a personal responsibility for safety of the workers.
Lomax fell while climbing out of tank which had been constructed on the back of a flatbed truck. This was the first time Lomax had been in this tank. Wilkerson, Speed, and a co-employee, William D. Johnson, had been in and out of that particular tank many times before Lomax fell. They testified with particularity as to how they entered and exited the tank without incident. There is a conflict in the evidence as to whether Lomax was instructed on how to enter and exit the tank. Resolving this in his favor, we will assume that he was not so instructed and was not violating instructions at the time of his injury. Lomax chose to exit the waist-high tank by pushing up with his arms on one side of the 22-inch opening at the top of the tank and bringing his feet to the other edge of the opening so that he formed an inverted V, with his hands and feet balanced on a two-inch rim. While in this position, he lost his balance and fell.
We cannot find any evidence that Wilkerson's or Speed's action in having Lomax clean out a tank, which Wilkerson had entered and exited many times without injury, was done with the consciousness that Lomax would likely be injured. Without this, an essential element of wantonness is missing.
There was no error in directing a verdict for Speed and Wilkerson on the wantonness count.
Lomax contends that the trial court committed reversible error in the manner in which it handled instructions to the jury regarding the necessity of reaching a decision in this case. We disagree.
Lomax did not object to the trial court's instruction. InOtt v. Smith, 413 So.2d 1129, 1132 (Ala. 1982), this Court wrote:
 "It is a well settled rule that a party who fails to object to alleged errors at the trial level may not raise these alleged errors for the first time as the basis for an appeal. Holt v. Davidson, 388 So.2d 548 (Ala. 1980); Record Data International, Inc. v. Nichols, 381 So.2d 1 (Ala. 1979)."
After the jury had been out a short time, it reported that it was unable to reach a decision. Judge Byrd made the following statement to the jury:
 "This comes as a shock to me. I spent all day yesterday trying this case. I spent all this morning trying it, and you go out and in an hour and fifteen minutes report back to me that you can't reach a decision. This case has got to be resolved. I don't want anyone to violate their principles or do something that would go against their conscience, but being a juror is not always an easy task, and this is a case where you heard two good lawyers put on all the evidence there was, and you know, there is just nothing else to be done except get another twelve and let them decide it, and I certainly don't want to do that after an hour and fifteen minutes. So I am going to ask y'all to go ahead and go to lunch, decide what time you want to come, go back into the jury room with an idea of give and take and see if you can't resolve this matter for us."
Judge Byrd's instruction did not exceed the bounds of the trial court's discretion in expediting the trial of cases.Ashford v. McKee, 183 Ala. 620, 62 So. 879 (1913). Judge Byrd admonished the jurors not to deviate from their consciences, but to take a break, come back, give and take, and try to resolve this matter. They did. The jury was polled and each of them said that the jury's verdict was his/her verdict. *Page 458 
On direct examination, the plaintiff elicited evidence about pain clinics from a physician, who was his witness:
 "Doctor, is there a pain clinic of the type you have described in our area, immediate area?
". . .
"Where is it located?
". . .
 "And what are the costs involved in that, Doctor?"
On cross-examination, the following colloquy occurred:
 "Q. You mentioned pain centers. Are you familiar with the University of Alabama in Birmingham pain clinic?"
"A. Um-hum.
 "Q. Are you familiar — well, you've probably referred patients to pain centers in the past.
"A. Right.
 "Q. Are you familiar with the policy that U.A.B. has regarding patients who have litigation pending?
"A. Yes.
"Q. And what is that policy?
 "MR. GIBSON: Excuse me, your Honor, we'd object. It's irrelevant. That has not even been suggested as to who would intend to recommend his client to — his patient to.
"THE COURT: Overrule. You may answer it."
Section 12-21-137, Code of Alabama 1975, provides a right to a "thorough and sifting" cross-examination. This right is not limited to criminal cases. Mobile Cab Baggage Co. v. Busby,277 Ala. 292, 169 So.2d 314 (1964).
The scope of cross-examination must of necessity be committed to the discretion of the trial court, and in the absence of abuse of discretion, the trial court's ruling will not be reversed. See the numerous citations at 19A Alabama Digest,Witnesses, key number 267.
Lomax opened the door for this testimony. The trial court did not abuse its discretion in permitting the physician to answer the question propounded to him on cross-examination.
AFFIRMED. TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, BEATTY and STEAGALL, JJ., concur.
ADAMS, J., not sitting.