The plaintiff, Kathryn Wood, appeals from judgments based on directed verdicts entered for the defendants, Bishop Joseph G. Vath,[1] a corporation sole; Abbot Hilary Dreaper; and the Benedictine Society of Alabama, Inc. The defendants cross-appealed. We affirm.
On June 15, 1984, Father Edward Markley entered an abortion clinic in Huntsville, Alabama, with two cans of red paint he had purchased with his own money. After entering the clinic, he damaged three suction machines and injured Kathryn Wood. Ms. Wood filed a lawsuit against Father Markley on March 17, 1986, to recover for the injuries she had received. She also sued Bishop Joseph G. Vath, both individually and as a corporation sole; Abbot Hilary Dreaper; and the Benedictine Society, on the theory that these parties were the principals or masters of Father Markley.[2]
Discovery began on May 8, 1986. A pretrial conference was scheduled for June 19, 1986, but the conference was cancelled because there were several outstanding discovery motions and some of the defendants had not been served. During the discovery phase, the plaintiff made several attempts to conduct discovery, but the plaintiff claimed that some of the defendants had failed to respond or fully answer the plaintiff's discovery requests. As a result, on September 30, 1986, the plaintiff filed a motion to compel discovery and filed another such motion on October 31, 1986. The court granted both motions. Subsequently, the plaintiff moved for sanctions against certain defendants.
The pretrial conference was ultimately held on February 9, 1987. At the conference, the trial judge ruled on several outstanding motions, including the plaintiff's motion for sanctions. The judge also noted that discovery had not been completed at that time, but he permitted discovery to continue until trial on the condition that he would not grant a continuance due to incomplete discovery. Trial was set for March 16, 1987. On February 19, 1987, the plaintiff moved for a continuance because several discovery requests were still unanswered. The trial court refused to grant the motion.
At trial, after the close of the plaintiff's case, all of the defendants, except Father Markley, moved for a directed verdict. The trial court granted directed verdicts for Bishop Joseph G. Vath, a corporation sole; Abbot Hilary Dreaper; and the Benedictine Society. Each motion was granted on the ground that the plaintiff had failed to present a scintilla of evidence that Father Markley was acting as an agent or servant within the scope of his authority when he destroyed the suction machines and injured Ms. Wood. The following evidence was presented at trial regarding the principal/agent or master/servant relationship of Father Markley and these defendants:
1. Father Markley was a Benedictine monk and a member of the Benedictine Society;
2. Abbot Hilary Dreaper was Father Markley's superior in his capacity as a monk;
3. The Benedictine Society authorized its monks to become pastors of churches in certain counties when the Catholic Church was in need;
4. At the request of Bishop Vath, the Benedictine Society had given Father Markley permission to become the pastor *Page 804 
of Our Lady of the Shoals Catholic Church in Tuscumbia, Alabama;
5. In November 1983, Bishop Vath asked Father Markley to serve as the "Coordinator of Pro-Life Activities" for the diocese, which task Father Markley accepted;
6. Bishop Vath was Father Markley's superior in Markley's work as pastor and coordinator of pro-life activities, and he had the authority to remove Father Markley from these positions;
7. On one previous occasion in May 1984, Father Markley had entered an abortion clinic in Birmingham, Alabama, and damaged three suction machines with a sledge hammer;
8. Both Bishop Vath and Abbot Dreaper were aware of Father Markley's actions and, although they expressed written disapproval of his conduct, neither removed Father Markley from his position as pastor or pro-life coordinator.
9. Bishop Vath wrote several letters to Father Markley that were signed "Most Reverend Joseph G. Vath, D.D., Bishop of Birmingham in Alabama."
10. Father Markley drove a car owned by the Benedictine Society when he went to the clinic on the morning of June 15, 1984.
Trial continued on the claims against Father Markley and Bishop Vath, individually. The court entered a default judgment against Father Markley because he failed to respond to the discovery requests. The jury determined the damages and awarded Ms. Wood $17,500.00 in compensatory damages and $100,000.00 in punitive damages. The jury found no liability on the part of Bishop Vath, individually. On March 24, 1987, the court entered a final judgment.
The plaintiff moved for a new trial on April 14, 1987, and on May 28, 1987, the defendants moved to strike the plaintiff's motion for a new trial. The court denied the plaintiff's motion for a new trial on June 4, 1987, but the court did not specifically rule on the defendants' motion to strike.
Ms. Wood is appealing from the judgments based on directed verdicts for Bishop Vath, a corporation sole; Abbot Dreaper; and the Benedictine Society. The following issues are raised on appeal:
I. Did the trial court abuse its discretion by denying the plaintiff's motion for a continuance?
II. Did the trial court err in directing a verdict for a) Bishop Joseph G. Vath, a corporation sole; b) Abbot Hilary Dreaper; and c) the Benedictine Society?
In addition, the defendants cross-appealed and raised the following issues:
III. Was the plaintiff's appeal timely in light of the fact that the trial court failed to rule on the defendants' motion to strike the plaintiff's motion for a new trial?
IV. Was the plaintiff's appeal improper because the defendants were sued as joint tort-feasors and judgment had already been entered against Father Markley?[3]
 I. (Appeal)
The plaintiff claims that the trial court abused its discretion by denying her motion for a continuance. As grounds for the motion the plaintiff had asserted that the defendants had delayed responding to the discovery requests and that she did not have sufficient time to prepare for trial. In addition, the plaintiff claimed that the fact that the trial court waited until the pretrial conference to rule on various outstanding motions further delayed her ability to prepare her case. Finally, the plaintiff claimed that on the day following the pretrial conference, one defendant telephoned the plaintiff and stated that if all parties agreed, the court would permit a continuance of the trial date. Based, she said, on the belief that the trial was to be continued, the plaintiff cancelled a scheduled deposition. However, one of the defendants later refused to agree to the continuance. The plaintiff asserted that these were sufficient reasons to justify a continuance. Nonetheless, the only disadvantage *Page 805 
the plaintiff claimed as a result of the trial court's denial of her motion was that she was not able to conduct discovery in the manner she would have chosen pursuant to Rule 26, A.R.Civ.P.
The trial judge has broad discretion to grant or deny a motion for a continuance. Mobile Cab Baggage Co. v. Busby,277 Ala. 292, 169 So.2d 314 (1964). However, continuances are not favored, and this Court will not reverse the trial court's decision unless there has been a clear abuse of discretion. SeePerdue v. Mitchell, 373 So.2d 650 (Ala. 1979). In the instant case, the trial court ruled on several outstanding motions at the pretrial conference. Furthermore, the court noted that there were still some outstanding discovery requests at the time of the pretrial conference. The court permitted discovery to continue until immediately prior to trial on the condition that "continuances [would] not be granted on the grounds of incomplete discovery." Although the trial judge clearly had the authority to grant a continuance, the judge specifically stated in his pretrial order that he would not grant a continuance based on incomplete discovery. That is exactly the ground upon which the plaintiff based her request for a continuance. We find no abuse of discretion in the court's decision to deny a continuance.
 II. (Appeal)
The plaintiff's second argument is that the trial court erred in directing the verdicts in favor of Bishop Vath, a corporation sole; Abbot Hilary Dreaper; and the Benedictine Society. The plaintiff claims that there was a scintilla of evidence that each of these defendants was the master or principal of Father Markley and that they were negligent in their hiring and supervision. We disagree.
As to the directed verdict for Bishop Vath, a corporation sole, we find no evidence in the record to support the conclusion that Bishop Vath was acting as a corporation sole in any of his actions involving Father Markley. See Ala. Code 1975, § 10-4-1. The only evidence presented by the plaintiff were some letters to Father Markley from Bishop Vath on "Bishop's Office" letterhead in which the Bishop signed the correspondence "Most Reverend Joseph G. Vath, D.D., Bishop of Birmingham in Alabama." Without more, we conclude that the signature on the letters, absent the designation "a corporation sole," does not even create an inference that Bishop Vath was acting in his corporate capacity.
Furthermore, a corporation sole has very specific functions, see Ala. Code 1975, § 10-4-4, which relate to conducting a business, not ecclesiastical duties. Section 10-4-4 sets forth the particular powers of a corporation sole. These powers include, for example, holding and conveying real and personal property, succession in its corporate name, borrowing money, and appointing officers to conduct business. Because the powers of a corporation sole are limited by statute, unless the substance of the Bishop's letters involved a function specified in § 10-4-4, then even if the Bishop intended to sign the letters as "a corporation sole" it would not necessarily create liability on the part of the corporation sole.
In the instant case, three letters were admitted into evidence containing the signature and title "Most Reverend Bishop Joseph G. Vath, D.D., Bishop of Birmingham in Alabama." In one of the letters, the Bishop reprimanded Father Markley for using violent conduct to achieve his goals. In another letter, the Bishop accepted Father Markley's resignation as pro-life coordinator. In the final letter, the Bishop noted that Father Markley would be returning to the Abbey and thanked him for his services as pastor of Our Lady of the Shoals Catholic Church. None of these letters contains a reference to anything that could be construed as a business activity within the meaning of § 10-4-1. Therefore, even if it were the Bishop's intent to sign his letters to Father Markley as a corporation sole, without more, we find no basis for liability on the part of Bishop Vath, a corporation sole. Therefore, we conclude that the verdict in favor of Bishop *Page 806 
Vath, a corporation sole, was properly directed.
As to the directed verdicts for Abbot Dreaper and the Benedictine Society, the plaintiff's entire argument on appeal is as follows:
 As to Dreaper and the Society, plaintiff's evidence affirmatively established that Markley was a member of the Society and, as such, was subject to Dreaper's orders as it related to his 24-hour life as a monk, including the authority to recall him to the abbey. The evidence established that Dreaper knew of at least one previous act of violence on Markley's part, but failed or refused to exercise any discipline over him because of it. Finally, it established that Markley was driving a Society-owned car when he went to Huntsville and attacked the plaintiff. All these facts constitute more than the requisite scintilla of evidence necessary for the case to have gone to the jury.
We disagree.
The Benedictine Society is a clerical order. Father Markley is a monk in that Society and Abbot Dreaper is his superior. However, the relationship between Father Markley and the Society was ecclesiastical and did not necessarily create a legal master/servant or principal/agent relationship. See 76 C.J.S. Religious Societies § 44 (a) (1952), p. 801. Furthermore, the fact that Father Markley is a monk — and also a priest — 24 hours a day, does not necessarily mean that his membership in the Society makes the Society liable for all of his actions. In ruling on Abbot Dreaper's motion for a directed verdict, the trial court made the following comments:
 THE COURT: This Court finds not a scintilla of evidence of agency as to Abbot Dreaper. There is no evidence to the effect that Abbot Dreaper was in authority in a master-servant relationship with Edward Markley at the time of the events in question. This Court understands the law with regard to ecclesiastical orders, religious societies to be that the relationship is essentially ecclesiastical in nature. I would analogize this to situations where a young man may be in a seminary and the seminary be asked to supply a preacher or a minister for a congregation. The fact that the young minister may have some alma mater does not make the seminary responsible for his behavior in the event he elects to commit a burglary or some other act which he might consider to be ordained by divine aegis or providence. It would [not] in and of itself make the seminary responsible for his behavior. The Abbot in question in this case, absent some proof in the record to the effect that the behavior of Edward Markley was in the line and scope of employment for the abbey, would not be responsible as principal, and I find no scintilla of evidence to that effect. I find that the oath was an ecclesiastical oath, that even if it had any bearing, it was not an oath to Abbot Dreaper in this case.
Furthermore, in directing a verdict for the Benedictine Society, the court stated:
 Well, in viewing the evidence as it relates to the Benedictine Society-Defendant, in the face of the motion for directed verdict, this Court finds that there is no scintilla of evidence that the Benedictine Society was acting in a principal-agency capacity with the Defendant Edward Markley. Further, the Court finds that there was no employment as that term implies or no employment in the sense required for a negligent employment.
 If there was agency in this case or if there is a scintilla of evidence as to agency, it would be, and I am not saying it is, because I won't pretermit the arguments in other motions, but it would be in the area of acting in the capacity of head of the pro-life movement. There is [an] absolute dearth of evidence that the Benedictine Order had anything to do with inaugurating the activities of the pro-life movement. They may have been in sympathy with those, many of us may be; but that does not make anyone who also is so inclined an agent of those who are not as active. So I find that there is no evidence in this case under any count of the Complaint or the statements of claims in the pretrial order which evidence is sufficient to hold the Benedictine *Page 807 
Society of Alabama [liable] in this case. . . .
We concur with the trial court's reasoning. In order to prove that the Society or Abbot Dreaper was responsible for Father Markley's actions, the plaintiff must have evidence in addition to the fact that Father Markley was a member of the Benedictine Society of monks.
Furthermore, even if this Court were to hold that Abbot Dreaper or the Benedictine Society was the master or principal of Father Markley, the plaintiff presented no evidence that Father Markley was acting within the scope of his authority when he damaged the machines and injured Ms. Wood.
Finally, the plaintiff claimed that the fact that Father Markley was driving a Society-owned car when he drove to the clinic was sufficient evidence to meet the scintilla rule. However, Father Markley had access to the car for both personal and business use; therefore, the mere fact that he was driving the car does not, standing alone, constitute a scintilla of evidence that the Society was responsible for Father Markley's actions.
For the foregoing reasons, the directed verdicts for Bishop Vath, a corporation sole; Abbot Dreaper; and the Benedictine Society are due to be affirmed.
 III. (Cross-Appeal)
The defendants/cross-appellants, Bishop Vath, a corporation sole; Abbot Dreaper; and the Benedictine Society, assert that Ms. Wood's appeal was untimely. They reason that the trial court's refusal to rule on their motion to strike prior to June 4, 1987, constituted reversible error. More particularly, they assert that if the trial court had ruled on the motion to strike at an earlier time, then the plaintiff's time for filing an appeal would have begun to run earlier; therefore, they say, the plaintiff's appeal was untimely. We disagree.
Final judgment was entered on March 24, 1987. On April 20, 1987, the plaintiff moved for a new trial. On May 28, 1987, the defendants moved to strike the plaintiff's motion for a new trial. The trial court denied the plaintiff's motion for a new trial on June 4, 1987, but did not specifically rule on the defendants' motion to strike.
We conclude that the plaintiff's motion for a new trial was timely filed. According to Rule 4, A.R.App.P., the time for filing an appeal is tolled until the trial court has ruled on the motion for a new trial. In the instant case, the plaintiff had 42 days after June 4, 1987, to file an appeal; therefore, we conclude that the plaintiff's appeal, filed on July 14, 1987, was timely.
In addition, the defendants' argument that the trial court committed reversible error by not ruling on their motion to strike is without merit. First, the court pretermitted the need to rule on their motion to strike by denying the plaintiff's motion for a new trial. Second, the trial court was under no obligation to rule on the defendants' motion to strike prior to ruling on the plaintiff's motion; therefore, it is of no consequence that, in theory, the deadline for filing an appeal would have occurred earlier if the trial court had ruled earlier.
 IV. (Cross-Appeal)
The defendants next assert that the plaintiff's appeal is improper because the defendants, including Father Markley, were sued as joint tort-feasors and judgment had already been entered against Father Markley. We conclude that this argument has no merit, but the need for a discussion of this issue has been pretermitted by our decision upholding the directed verdicts.
For the foregoing reasons, the final judgments of the trial court are due to be, and they hereby are, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.
[1] We note that Bishop Vath died on July 14, 1987.
[2] The complaint was amended on May 5 and May 29, 1986, and again after the pretrial conference.
[3] This is the issue as presented by the defendant. *Page 808