ADAMS, Justice.
This case involves an appeal and a cross-appeal from a judgment based on a jury verdict in the amount of $500,000 in favor of Dr. Martin Perlman and $150,000 in favor of his wife, Tamra Perlman. The judgments come in a lawsuit arising out of an automobile accident. The defendants, Carl Bradshaw Wiggins and Thames Batré Mat-tei appeal, contending that the trial court erred in refusing to grant a mistrial after the plaintiffs’ attorney made statements regarding the existence of insurance on the part of the defendants. They also claim that their motion for a new trial should have been granted. The Perlmans’ cross-appeal concerns the trial court’s handling of the future damages award in this case. Because of our finding that a new trial is indeed in order, a discussion of the issues on cross-appeal is pretermitted.
Dr. Martin Perlman, prior to the accident giving rise to this case, suffered from a spinal disorder known as transverse myelitis.[1] He was recuperating when the auto *270 mobile accident with Wiggins occurred. Perlman contends that although he had experienced some degree of urinary and sexual dysfunction prior to the accident, he says that he had made considerable progress in those areas, and that the accident damaged his already weakened state and aggravated his disorder. Wiggins admitted liability for the property damage resulting from the accident; however, he denied that Perlman’s injuries were caused by the accident.
The following statements were made at the beginning of trial in the presence of the jury:
“[Appellants’ attorney]: I think the evidence is going to show he wasn’t speeding. There’s no doubt that he was inattentive, and he basically caused the accident. We are not here to tell you that, you know, he didn’t cause this accident. It wasn’t inattention—
“[Appellees' attorney]: Excuse me. Judge, that’s — they’ve taken the position there’s no liability in the pleadings. That’s the first I’ve heard of their admitting any kind of — that they are at fault. “The Court: Well, he can tell what he expects the evidence to show.
“[Appellants’ attorney]: Judge, this is a case where Mr. Killion knows that my clients have already — back in 1987, back after this accident happened — paid the property damages that were sustained by Dr. Perlman and his motor vehicle, that was taken care of back then.
“[Appellees’ attorney]: Excuse me. Judge, I’m going to object to improper characterization of who paid it. It was paid by their insurance company and not his client. Now, he’s the one that injected this into the case.
“[Appellants’ attorney]: Your Honor we object and move for a mistrial.”
Wiggins and Mattei argue that the trial judge erred in not granting a mistrial based on the reference by the Perlmans’ attorney to Wiggins’s insurance company’s having paid for the property damages to Dr. Perlman’s automobile. He argues that there was no reasonable explanation for the insertion of the insurance issue except to bring to the attention of the jury that Wiggins would suffer no out-of-pocket loss should the jury find in favor of Perlman and his wife. Wiggins further contends that Perlman’s attorney made another statement to the jury that constituted error. During closing arguments, the attorney for Wiggins and Mattei objected and requested curative instructions when the Perlmans’ attorney stated that he was not asking the jury to punish Wiggins and that Wiggins himself would not be punished.
The Perlmans, on the other hand, contend that any statement made with regard to the existence of insurance constituted a “reply in kind” and, therefore, that no error was committed.
“ ‘Arguments which are replies in kind or are provoked by arguments of opposing counsel do not amount to reversible error.’ Osborne Truck Lines, Inc. v. Langston, 454 So.2d 1317, 1322 (Ala.1984).”
Stallworth v. Holt, 534 So.2d 1063, 1069 (Ala.1988). See also Smith v. Blankenship, 440 So.2d 1063,1066 (Ala.1983), citing Mobile Cab & Baggage Co. v. Busby, 277 Ala. 292, 169 So.2d 314, 320 (1964). They further argue that, with regard to the statement made during closing arguments, no error was committed.
Considering the reference made to insurance in the present case, we find that the comment by the Perlmans’ attorney did not constitute a reply in kind. Wiggins’s and Mattei’s attorney, in his opening argument, was merely pointing out that his clients *271 had accepted responsibility for the property damage to Dr. Perlman’s vehicle as a result of the accident. There was no reason for the Perlmans to make reference to the insurance in this case, and, if not based solely on the statement made by the Perl-mans’ counsel, then at least coupled with the other references by the Perlmans that they were not asking the jury to punish Wiggins himself, we find that a mistrial should have been granted. The trial judge himself stated the following at the close of the trial, during a hearing on the motion for a new trial:
“As to the motion for new trial I’m concerned about that insurance issue at this time just like I was when it first came up. I wish I would have granted a mistrial then. But at this point I know it’s going to the Supreme Court and I’m inclined to let it go on and I’ll watch with interest to see what happens. But I’m going to and feel that I should deny the motion for a new trial and the motion for remittitur.”
Because we find error, we reverse and remand for a new trial. Any discussion of the cross-appeal is pretermitted and, therefore, that appeal is dismissed.
89-1368 — REVERSED AND REMANDED.
89-1461 — DISMISSED.
ALMON, STEAGALL, KENNEDY and INGRAM, JJ., concur.

. The appellant summarized a description of the disease in his brief, citing testimony in the record:
"Acute transverse myelitis is an enigmatic, life-threatening disease of the spinal cord which occurs when one of several viruses invades the spinal area and the body responds by producing antibodies to attack and destroy the virus. Because the antibodies fail to differentiate between infectious agents and healthy tissue, they attack the spinal cord as well. In turn, this causes an inflammation of *270 the spinal cord which results in rapidly-onset-ting paralysis. (R4-35-38, 138-39).
"Infected individuals who contract transverse myelitis rarely make a complete recovery; only ten to twelve percent show absolutely no adverse effects from the disease. Of the ninety percent that do not reach full recovery, ten percent die almost immediately after the disease's onset. The remaining eighty percent are left with varying degrees of neurological deficits, often necessitating confinement to a wheelchair or permanent reliance on crutches. Many regain the ability to walk but retain some window of neurological deficit not affecting their ambulatory function. These deficits may manifest themselves as sexual, bowel, and urinary dysfunction. (R4-176-80; R5-334-37)."