J. Mark Cramton, guarantor on a note, appeals from a judgment against him awarding $63,261.32 to Altus Bank, the creditor on the note. After collateral securing the note was sold and the sale approved by the United States District Court for the Southern District of Alabama, Altus Bank brought this action against Cramton for the deficiency between the amount realized on the sale of the collateral and the amount due on the note. The circuit court in this action entered a partial summary judgment against Cramton's defense that the repossession and sale of the collateral were conducted in a commercially unreasonable manner, and the court granted a motion in limine
prohibiting Cramton from introducing any evidence of the value of the collateral. The case went to trial on Cramton's defense that his personal guaranty had been cancelled, but the jury found in favor of Altus Bank on that defense and awarded damages accordingly. The circuit court entered a judgment on that verdict. Cramton argues on appeal that the court erred in holding that the federal court's approval of the sale barred him from litigating the issue of commercial reasonableness, and he argues that the court erred in *Page 904 
refusing to grant a continuance of the trial after entering the partial summary judgment and granting the motion in limine
immediately prior to trial.
Altus Bank, after filing this action, filed a motion for summary judgment, which the trial court denied. The Bank then filed a motion for partial summary judgment, or, in the alternative, a motion in limine. The court initially denied the motion for partial summary judgment and delayed its ruling on the motion in limine until the date of trial. The following statement of facts comes largely from the matters submitted in support of Altus Bank's motions; the facts are uncontested by Cramton unless otherwise stated.
On May 14, 1985, C H Marine Diving Salvage, Inc. ("C 
H") borrowed $135,000 from Altus Bank.[1] John J. Hall signed the note as C H's president, and J. Mark Cramton attested the note as C H's secretary. A mortgage agreement covering two barges, the Raymond Lee and the Ranger I, secured the note. According to the mortgage agreement,
 "in the event of [default] . . . [Altus Bank] may, at [the Bank's] option, . . . [t]ake possession of the vessels without legal process, and . . . lease, charter, operate, or otherwise use the vessels . . . as [the Bank] may deem advisable . . . [and/or w]ith or without taking possession of the vessels . . . sell and convey the vessels . . . at public outcry. . . ."
Along with the note, Hall and Cramton also executed a guaranty agreement. The terms of the agreement personally obligated Hall and Cramton to pay C H's debt to the Bank in the event that C H defaulted.
During the term of the loan C H struggled as a business. To allow the sale of the barge Raymond Lee, C H requested the Bank's release of the barge from the security agreement. Following the Bank's release and C H's sale of the RaymondLee, C H eventually failed as a business venture. According to the Bank, C H went into default on June 14, 1987. Later, C H declared bankruptcy. To protect its interests, Altus Bank filed a complaint in the United States District Court, seeking relief under admiralty law. Among other things, the Bank's complaint requested that the federal court order that theRanger I be sold and the sale proceeds credited towards the balance due under the note.
On September 16, 1987, the U.S. marshal seized the barge and the federal court ordered that public notice be given of the Bank's action and the marshal's seizure. After the court-ordered public notice, no other parties intervened in the proceedings and, on November 17, 1987, the U.S. District Court ordered the sale of the barge. The court ordered that public notice of the sale be given and that the sale take place on December 9, 1987. Public notice was given and the sale took place. At the sale, Altus Bank was the only party to submit a bid. The Bank's bid of $55,000 was based on its appraiser's estimate of the barge's fair market value. The appraisal that resulted in this estimate of the barge's fair market value occurred on December 7, 1987. On January 5, 1988, the federal court confirmed the sale of the barge to the Bank.
After the proceeds of the sale were applied to the balance due under the note, a balance of $48,779.54 remained. Based on Cramton's personal guarantee of C H's debt, the Bank filed the present action in the state court against Cramton on November 18, 1988, requesting a deficiency judgment of $48,779.54, plus accrued interest and attorney fees. Cramton answered and raised affirmative defenses, as stated above. In denying the Bank's first motion for summary judgment, the judge noted that the existence of the Bank's alleged release of Cramton from any liability under the note was a question for the jury. When the case was called for trial, the court stated the following:
 "And the Court has considered the motion in limine and argument of Counsel and it is the opinion of the Court that under the holding of American National Bank Trust Company of Mobile v. *Page 905 Robertson, [384 So.2d 1122 (Ala.Civ.App. 1980)], the issue of the commercial reasonableness of the sale of the collateral involved in this [case] is foreclosed because the collateral was sold pursuant to federal maritime court action.
 "The Court is going to grant the Plaintiff's motion in limine and, so the record will be perfectly clear, it is going to also reverse itself and grant the Plaintiff's motion for partial summary judgment on the issue of the commercial reasonableness of the sale or any issue involved in the events leading up to the sale, such as whether or not the Plaintiff exercised the proper care . . . of the collateral and so forth. The Court wants to make it clear that it is forestalling the Defendant from interjecting into the trial any issues with respect to either the terms of the sale or the events leading up to the sale."
As a result of the judge's grant of the Bank's motions, Cramton's lawyer moved for a continuance of the trial. As grounds for this motion, Cramton's lawyer argued that the judge's earlier denial of the Bank's motion for partial summary judgment implied the existence of a factual dispute on the issue of whether the Bank's care and disposition of the collateral were commercially reasonable. Cramton's lawyer argued that his preparation for trial was based on this implication and that a substantial part of his trial preparation and evidence addressed the issue of whether the Bank's care and disposition of the collateral were commercially reasonable. The judge denied the motion for a continuance and proceeded with the trial.
Our disposition of Cramton's first issue begins with our recognition that a secured party has a right, but not a duty, to repossess the collateral. Code 1975, §§ 7-9-501, -503. Only after taking possession of the collateral does a secured party have an obligation to exercise reasonable care in preserving the collateral. Code 1975, § 7-9-207. Following the secured party's repossession of the collateral, the Alabama Commercial Code requires that every aspect of the secured party's disposition of the collateral be commercially reasonable. Code 1975, § 7-9-504. Where the disposition of the collateral has been approved in a judicial proceeding, the disposition isconclusively deemed to be commercially reasonable. Code 1975, § 7-9-507(2); American National Bank Trust Co. of Mobile v.Robertson, 384 So.2d 1122 (Ala.Civ.App. 1980). As noted inBryant v. American National Bank Trust Co. of Chicago,407 F. Supp. 360 (N.D. Ill. 1976):
 "[A] judicial approval of a disposition of collateral is given conclusive effect not because the tribunal necessarily scrutinized all the aspects of the disposition and found them reasonable, but because the hearing allowed the parties to voice their objections and to comment upon the proposed transaction. If the parties have had an opportunity for thorough discussion of the sale's terms, it is appropriate to give the court's determination of reasonableness a conclusive effect.
 "This interpretation of § 9-507(2) squares with the general policy behind Article 9 of the Uniform Commercial Code. As one commentator described it, Article 9 attempts to impede dishonest dispositions of the collateral without strangling honest transactions with red tape. Thus, § 9-504 mandates a disposition which is commercially reasonable in every aspect. But to lighten the burden on the creditor, § 9-507(2) suggests 'various methods to which secured parties may resort to protect themselves' from later claims that their disposition was unreasonable. One of these methods is to procure approval in a judicial proceeding. If the approval emanates from a full and fair hearing, a court which 'collaterally' reviews the disposition's reasonableness should not attempt to further investigate the individual aspects of the sale, except to determine whether the creditor followed the approved procedures or obtained the approval through overreaching or collusion. To investigate more deeply is to subvert the drafters' intention that judicial approval should be conclusive on the issue of commercial reasonableness." *Page 906 
Id. at 364-65 (citations omitted; footnote omitted). This Court finds the above reasoning persuasive and holds that any objection to the commercial reasonableness of a secured party's disposition of the collateral must come during the judicial proceeding in which approval of the disposition is sought, unless the objection is to the procedure or some overreaching, collusion, or similar malfeasance on the part of the secured party.
In the present case, the Bank sought and received the federal court's order for, and approval of, the sale of the barge. Cramton did not appear and did not object. In this action for a deficiency judgment, Cramton presented no evidence that the federal court proceedings were procedurally defective and no evidence that the Bank was guilty of overreaching, collusion, or similar malfeasance. For these reasons, the sale of the barge is conclusively deemed to be commercially reasonable and any evidence of the barge's value or the Bank's care and disposition of the collateral was immaterial, and the trial court correctly entered the summary judgment as to this defense and correctly granted the motion in limine.
The second issue involves the judge's refusal to grant a continuance following his reversal of his previous denial of the Bank's motion for partial summary judgment and his grant of the Bank's alternative motion in limine.
"The trial judge has broad discretion to grant or deny a motion for continuance." Wood v. Benedictine Society ofAlabama, Inc., 530 So.2d 801, 805 (Ala. 1988) (citations omitted). In Alabama, "[i]t is firmly established . . . that continuances are not favored, and therefore the trial court's denial of a motion for continuance will not be reversed unless palpable or gross abuse of discretion is shown." Selby v.Money, 403 So.2d 218, 220 (Ala. 1981) (citations omitted). In the present case, the judge reserved ruling on the Bank's motion in limine until the time of trial. As Cramton points out in his brief, the Bank's motion in limine was based on the same basic grounds as the previously denied motion for partial summary judgment, i.e., that evidence of the Bank's alleged commercially unreasonable care and disposition of the collateral and evidence of the barge's value was immaterial because of the federal court's prior judicial approval of the sale and Cramton's failure to appear and object during the proceedings that resulted in that approval. The same arguments for and against the Bank's motion for partial summary judgment applied to the motion in limine. When the judge postponed his ruling on the Bank's motion in limine, he effectively postponed his ruling on the issue of whether the Bank's care and disposition of the collateral were commercially unreasonable. Although this Court does not completely approve of the judge's postponement of the partial summary judgment issue until the day of trial, Cramton's lawyer should have been prepared to present his case should the judge decide to grant the Bank's motion in limine. Based on the similarity of the issues presented in the Bank's motion for partial summary judgment and its alternative motion in limine and considering the clarity of § 7-9-507(2), as discussed supra, this Court holds that the judge did not abuse his discretion in denying the motion for a continuance.
Therefore, the judgment of the Circuit Court of Baldwin County is affirmed.
AFFIRMED.
ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] Altus Bank was known at that time as First Southern Federal Savings and Loan Association.