John DOE 1–22, Respondents,

v.

**ROMAN CATHOLIC BISHOP OF FALL RIVER, Appellant,**

Diocese of Crookston, et al., Defendants.

No. C8–93–1428.

Court of Appeals of Minnesota.

Dec. 21, 1993.

Jeffrey R. Anderson, Mark A. Wendorf, Karen A. Kugler, Reinhardt & Anderson, St. Paul, for respondents.

John F. Angell, Scott P. Drawe, Stich, Angell, Kreidler & Muth, Minneapolis, for appellant.

Considered and decided by PETERSON, P.J., and KLAPHAKE and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Appellant Roman Catholic Bishop of Fall River, Massachusetts, appeals the district court's denial of summary judgment based on a determination that long-arm jurisdiction exists over the Fall River Diocese. We affirm.

## FACTS

Respondent James R. Porter was ordained as a priest in the Fall River Diocese of Massachusetts on April 2, 1960. Porter served as a priest in that diocese from 1960 to 1967. From August 1964 to September 1965, through the diocese, Porter received psychiatric treatment for pedophilia at a hospital in Wellesley, Massachusetts. In the fall of 1965, the diocese assigned Porter to a parish in New Bedford, Massachusetts. In April 1967, because of further incidents of sexual abuse, the diocese removed Porter from the parish and revoked his faculties to act as a priest in the diocese. Porter moved to his parents' home in Stoneham, Massachusetts. While in Stoneham, Porter continued to sexually abuse children.

In 1967, Porter left Massachusetts and went to Via Coeli Monastery of the Servants of the Holy Paraclete in Jemez Springs, New Mexico, for residence and psychological treatment. Although there is some dispute whether Porter went to New Mexico on his own initiative or was sent by the diocese, a letter from former bishop James Connolly of Fall River states that he sent Porter to Via Coeli. The Servants of the Holy Paraclete wrote to Bishop Connolly and asked how to deal with Porter. Bishop Connolly authorized Porter's treatment and accepted responsibility for his expenses. During the fourteen months Porter resided at Via Coeli, Fall River paid for his lodging and medical and psychiatric expenses. At Bishop Connolly's request, the Servants of the Holy Paraclete periodically provided reports on Porter's progress. Porter corresponded with Bishop Connolly while at Via Coeli. Eventually, in a letter to the Archbishop of the Santa Fe Diocese, Bishop Connolly endorsed Porter's application to practice as a priest in New Mexico.

In June 1969, responding to a request for summer assistance in northern Minnesota parishes, the Servants of the Holy Paraclete sent Porter to their facilities in Nevis, Minnesota. Fall River was informed of the transfer and paid for Porter's expenses in Nevis. In August 1969, the Crookston Diocese in Minnesota granted Porter faculties to act as a priest in the diocese and assigned

him to St. Philip's Church in Bemidji. Fall River, however, retained ultimate authority over Porter's status as a priest, and was notified of the assignment. Porter corresponded with Bishop Connolly while at St. Philip's. Between August 1969 and September 1970, Porter sexually molested respondents John Does 1–22 while at St. Philip's. The acts of abuse allegedly related directly to Porter's duties as a priest at St. Philip's. In September 1970, the Crookston Diocese removed Porter from St. Philip's and sent him to St. Michael's Institute in St. Louis, Missouri, another facility of the Servants of the Holy Paraclete. Fall River was apprised of the situation and paid for Porter's expenses at St. Michael's.

After a professional evaluation, St. Michael's determined that Porter should not be allowed to return to parish work and sent its recommendation to Fall River. Fall River suspended Porter from the priesthood in November 1970. Porter returned to Minnesota to reside. Fall River paid Porter's health insurance premiums in 1970. In 1973, Fall River sought the assistance of the Archbishop of St. Paul to laicize Porter; Porter was laicized in 1974.

Respondents commenced this action in 1992 against the Fall River Diocese, the Diocese of Crookston, the Servants of the Holy Paraclete of Via Coeli, and Porter. The action alleges claims for damages for negligent supervision of an employee and failure to warn. On June 18, 1993, the district court rejected Fall River's challenge to personal jurisdiction and denied its motion for summary judgment.

## ISSUE

Are minimum contacts present when a diocese, although aware of a priest's pedophilia, nevertheless authorizes an intermediary to assign the priest to parish work and acquiesces in his assignment within the forum state?

## ANALYSIS

■ An order denying a pretrial motion to dismiss for lack of jurisdiction is appealable as of right. *S.B. Schmidt Paper Co. v. A to Z Paper Co.*, 452 N.W.2d 485, 487

(Minn.App.1990). This court is not bound by the district court's ultimate legal decision regarding jurisdiction. *Impola v. Impola,* 464 N.W.2d 296, 297 (Minn.App.1990); *see also Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 411–12 (Minn.1992) (exercise of personal jurisdiction not in the district court's discretion). When personal jurisdiction is challenged, the plaintiff has the burden of presenting a prima facie case demonstrating sufficient minimum contacts. *Dent–Air, Inc. v. Beech Mountain Air Serv.,* 332 N.W.2d 904, 906–07 (Minn.1983). The veracity of the plaintiff's allegations and evidence is not questioned at this pretrial stage. *Id.* at 907 n. 1.

■ Personal jurisdiction may not be exercised over a nonresident unless minimum contacts satisfying due process exist between the nonresident and Minnesota. *Valspar,* 495 N.W.2d at 411 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). A nonresident must "purposefully [avail] itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), *quoted in Dent–Air,* 332 N.W.2d at 907. The defendant must be in a position to "reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), *cited in Dent–Air,* 332 N.W.2d at 907. Minn.Stat. § 543.19 (1992), the long-arm statute, is applied to extend jurisdiction as extensively as that allowed under the federal law. *Valspar,* 495 N.W.2d at 411.

■ Subdivision 1(c) of the long-arm statute provides a basis for jurisdiction over a foreign entity that "[c]ommits any act in Minnesota causing injury." The district court determined that the contacts, though not extensive, were sufficient to exercise long-arm jurisdiction over Fall River in an action premised on a respondeat superior theory for negligent supervision and failure to warn. Fall River challenges the district court's minimum contacts decision, arguing

that its lack of action and indirect contact, if any, with Minnesota, are insufficient to confer personal jurisdiction.

■ In the context of products liability law, use of an intermediary and ignorance of the ultimate destination of a product does not shield a manufacturer from long-arm jurisdiction. *Rostad v. On–Deck, Inc.*, 372 N.W.2d 717, 721 (Minn.1985), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). Similarly, the Servants of the Holy Paraclete here are alleged to have acted at the behest of Fall River. Fall River's authorization of Porter's treatment at Via Coeli, acceptance of responsibility for his expenses, request to be informed of Porter's progress, and grant of permission for Porter's assignment to parish work, manifest an ongoing relationship between Fall River and Porter, with Via Coeli acting as an intermediary.

Unlike the assertion of jurisdiction in Oklahoma over the New York sellers of an Arizona-bound Audi in *World–Wide Volkswagen*, Porter's presence in Minnesota was not a mere fortuity. *See On–Deck*, 372 N.W.2d at 721; *see also Olson v. Magnuson*, 457 N.W.2d 394, 397 (Minn.App.1990) (national church organization's actual and regulatory relationship with local church established minimum contacts in sexual abuse case). Fall River's permission for Porter's assignment to a parish facilitated his entry into Minnesota. Fall River's initial unawareness of Porter's assignment to Minnesota ended when it was notified of Porter's assignments to Nevis and St. Philip's. Thereafter, Fall River paid Porter's expenses at Nevis, and it tacitly approved Porter's assignment to St. Philip's.

Under similar circumstances in *Does 1–9 v. CompCare, Inc.*, 52 Wash.App. 688, 763 P.2d 1237, 1239–41 (1988), *pet. for rev. denied* 112 Wash.2d 1005 (Wash. Feb. 28, 1989), a Louisiana diocese acquiesced in and paid for a pedophilic priest's choice of sanctuary at a Jesuit residence in Washington. The priest later obtained a counseling position in a hospital where he sexually abused children. *Id.* The Washington Court of Appeals asserted jurisdiction over the Louisiana diocese based on prima facie evidence of negligent supervision of an employee and failure to warn. *Id.*

at 1241 (citing Restatement 2d of Torts, § 315 (1965)).

■ Under section 315, although there is generally no duty to control another's conduct to prevent harm, a special relationship may create such a duty. *See Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 804 (Minn.1979). Special relationships include those of master and servant and persons granted custody of others with dangerous propensities. *Delgado v. Lohmar*, 289 N.W.2d 479, 483–84 (Minn.1979). In this vein, the *CompCare* court recognized the unique relationship between priest and diocese:

> The duty of obedience which [the priest] owed the Diocese encompassed all phases of his life and correspondingly the Diocese's authority over its cleric went beyond the customary employer/employee relationship.

763 P.2d at 1242. The evidence regarding the duties between Porter and the Fall River diocese is consistent with duties identified in *CompCare*.

Fall River, however, claims that Porter's actions were not within the scope of his employment. *Cf. id.* at 1242 (citing as contrary authority *Rita M. v. Roman Catholic Archbishop*, 187 Cal.App.3d 1453, 232 Cal. Rptr. 685 (1986) (priests' sexual abuse unforeseeable), *pet. for rev. denied* (Cal. Mar. 4, 1987)); *see also Brillhart v. Scheier*, 243 Kan. 591, 758 P.2d 219, 224 (1988) (as independent contractor, pastor's negligence could not be imputed to diocese); *Wood v. Benedictine Soc'y of Ala.*, 530 So.2d 801, 807 (Ala. 1988) (questioning ecclesiastical liability and finding actions beyond scope of authority). For purposes of deciding jurisdiction only, we accept as true respondent's asserted application of respondeat superior based upon the ongoing relationship between Fall River and Porter.

Finally, we note the relevance of the thoughts expressed by the *CompCare* court:

> Washington has a legitimate concern for protection of its children from sexual molestation. * * * Of import is the fact that the injuries occurred in the state of Washington. Plaintiffs and CompCare, as well as the medical and other expert witnesses,

are in Washington. The defendants, other than the LaFayette Diocese, are subject to jurisdiction in Washington, but not Louisiana.

763 P.2d at 1244. Consistent with due process, we believe that the same public policy rationales appropriately apply in the present case.

### DECISION

The district court did not err in determining that minimum contacts existed for exercise of personal jurisdiction over the Fall River Diocese.

**Affirmed.**